UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

KATHY LEONARD,                          )
                                        )
              Plaintiff,                )
                                        )
  v.                                    )        No. 2:24-CV-00072-JRG-CRW
                                        )
LIONS VOLUNTEER BLIND INDUSTRIES,       )
INC.,                                   )
                                        )
              Defendant.                )

## MEMORANDUM OPINION

In this civil action, the Plaintiff, Kathy Leonard alleges that her former employer, Lions

Volunteer Blind Industries Inc. ("Lions"), discriminated against her on the basis of her disability

in violation of the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12101 et seq. and the

Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103 et seq. Now before the Court is

Defendant's Motion for Summary Judgment [Doc. 24]. Plaintiff filed a Response [Doc. 27] and

Defendant replied [Doc. 29]. As discussed below, Defendant's motion for summary judgment will

be **GRANTED** as to the ADA claim, which will be **DISMISSED with PREJUDICE.** The

remaining state claim under the TDA will be **DISMISSED without PREJUDICE**.

## I.      BACKGROUND

### A.      Factual Background

Lions Volunteer Blind Industries is a nonprofit organization that provides textile

manufacturing service. [Doc. 27-2 ¶ 1; Doc. 28 at 5]. Its mission is to employ people with

disabilities, including those with visual impairments. [Doc. 27-2 ¶ 1]. Lions routinely

accommodates visually impaired employees by using guide tape, accommodating the use of

employees' canes, and rearranging employees' workstations as needed. [*Id.* ¶ 3].

Plaintiff—who is not visually impaired—became disabled due to a back injury she suffered in a 2019 car accident. [*Id.* ¶ 3; Doc. 27-4 at 39]. She was hired as an inspector at Lions in August 2020. [Doc. 27-2 ¶ 4; Doc. 27-3 ¶ 2]. When she began her employment, Plaintiff completed a survey informing Lions that she is disabled. [Doc. 27-7 at 2; Doc. 27-3 ¶¶ 3–4]. However, she does not recall requesting any accommodation at that time. [Doc. 29 at 18].

From August 2020 to mid-September 2022, Plaintiff worked at Lions, inspecting army helmet covers. [Doc. 27-3 ¶ 5; Doc. 27-4 at 38]. During that time, she always had a rolling chair at her workstation. [Doc. 27-3 ¶ 5]. According to Plaintiff, she began using a rolling chair because "that's just what I started with and that's what I had all the time—the whole time I was there." [Doc. 29 at 19]. Other employees also had rolling chairs. [*Id.* at 19].

In September 2022, Plaintiff went on extended medical leave due to a non-work-related back injury. [Doc. 27-2 ¶ 5].

In February 2023—while Plaintiff was still on medical leave—Lions removed wheels from chairs on the production floor and fitted the chairs with flat, non-rolling parts. [Doc. 24-1 at 34]. Chairs that still had wheels were pushed to a storage area at the back of the plant. [*Id.*]. According to Lions Supervisor April Oliver, all rolling chairs were supposed to be removed as a safety measure, in response to several incidents of falls caused by rolling chairs. [Doc. 29 at 33]. In one of those incidents, which occurred in March 2022, an employee was injured and required stitches when the chair flew out from under her and she fell on the concrete floor. [Doc. 28 at 31, 33]. According to Lions Plant Supervisor Jean Bradley, there was a concern that employees—especially those who were visually impaired—could fall on the concrete floor if a rolling chair moved while they were attempting to sit down or if the chair was moved from its usual position and obstructed the employee's path. [Doc. 29 at 16].

On February 3, 2023, Lions informed Plaintiff in writing that her FMLA[1] leave had expired and the discretionary leave she was currently on would end soon. [Doc. 27-2 ¶ 6; Doc. 24-1 at 6]. On April 10, 2023, Plaintiff presented Lions with a letter from her doctor stating that she was ready for "full duty, unrestricted work." [Doc. 27-2 ¶ 7; Doc. 24-1 at 4].

When Plaintiff returned to work on April 11, the same rolling chair that she had used before she went out on medical leave was at her workstation. [Doc. 27-3 ¶ 11]. With the assistance of the rolling chair, Plaintiff was able to perform her inspector duties. [*Id.* ¶ 12]. However, during her shift, Jean Bradley removed the rolling chair and replaced it with a chair that did not have wheels. [*Id.* ¶ 13]. Bradley said Plaintiff could not use a rolling chair because she presented a "fall risk" due to her recent back surgery. [*Id.*]. Using a chair without wheels, Plaintiff was unable to push forward and backward without hurting her back. [Doc. 27-4 at 40]. Plaintiff noticed that several other employees still had rolling chairs on the production floor. [Doc. 27-3 ¶ 23]. After work, she contacted her supervisor April Oliver and told her that she needed a rolling chair to perform her duties as an inspector. [*Id.* ¶ 16].

The following day, Plaintiff called off work due to back pain. [*Id.* ¶ 15].

When Plaintiff returned to work on Thursday, April 13, there was a chair with wheels at her workstation. [*Id.* ¶ 17]. Then, after lunch, April Oliver told Plaintiff that she had consulted with Lions Director of Health and Safety, Richard Tuttle, and no rolling chairs were allowed as a matter of safety policy. [Doc. 27-4 at 55; Doc. 27-6 at 2]. Oliver provided Plaintiff with a swivel chair instead in an effort to eliminate Plaintiff's need to push and pull herself away from her desk. [Doc. 24-1 at 42, 72]. Plaintiff told Oliver the swivel chair was not going to work because she would have to lean too far over to use the light. [*Id.* at 72]. Oliver and Bradley offered to move Plaintiff's

---

[1] Family and Medical Leave Act ("FMLA").

lighting and rearrange her work space. [*Id.*; Doc. 27-2 ¶ 17]. However, Plaintiff rejected these ideas because the light would shine in her eyes and she would still have to push and pull herself up to the workstation. [Doc. 27-4 at 42]. Oliver and Bradley also offered to modify Plaintiff's workstation with an extension so that she could swivel without having to push and pull the chair at all. [Doc. 24-1 at 39]. In her deposition, Plaintiff acknowledged that this accommodation would have solved her problem. [Doc. 27-4 at 43]. But she declined to try it and did not suggest any accommodation except the chair with wheels. [Doc. 24-1 at 39, 58].

Plaintiff used the swivel chair for the remainder of the day on Thursday. [Doc. 27-4 at 42]. On Friday, April 14, she continued trying to use the swivel chair and did not speak with anyone about accommodation. [*Id.*].

The following Monday, April 17, Plaintiff provided Lions a doctor's letter stating that she was "unable to return to work at this time" and that her "[r]eturn to work status will be reevaluated at next appointment on: 06/14/23." [Doc. 27-2 ¶ 19; Doc. 24-1 at 8]. The letter did not include a projected return to work date or identify any necessary accommodation. [Doc. 24-1 at 8].

On April 21, 2023, Lions informed Plaintiff that she was being terminated, per company policy, because she had exhausted all of her FMLA and company extended leave. [Doc. 27-2 ¶ 21; Doc. 24-1 at 10].

### B.      Procedural History

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated against her based on her disability. [Doc. 1-1 at 1, 11]. After obtaining a Right-to-Sue letter, she filed a lawsuit against Defendant in the Circuit Court for Washington County, Tennessee, alleging that Defendant discriminated

against her, in violation of the ADA, by "refusing to let her continue to use a chair with wheels on it." [*Id.* ¶ 31]. In addition, Plaintiff raised a discrimination claim under the TDA. [*Id.* ¶¶ 18–26].

Defendant removed the case to federal court. [Doc. 1]. Subsequently, Defendant filed a motion for summary judgment. [Doc. 24]. The Court stayed proceedings pending the Court's resolution of the summary judgment motion [Doc. 32]. This matter is ripe for review.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for [her]." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.    ANALYSIS

### A.    ADA Claim

Defendant maintains that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law on Plaintiff's ADA claim. The Court agrees.

"Under the ADA, an employer must make 'reasonable accommodations to known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee' unless it can prove that such an accommodation would impose an 'undue hardship' on

the business." *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 741 (6th Cir. 2015) (quoting 42 U.S.C. § 12112(b)(5)(A)). To determine the appropriate reasonable accommodation, the employer must engage in "an informal, interactive process with the employee with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). The "interactive process is mandatory and both parties have a duty to participate in good faith." *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007).

To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must show that (1) she is disabled within the meaning of the ADA, (2) she is otherwise qualified for the position (3) the employer knew or had reason to know of her disability, (4) the employee requested an accommodation, and (5) the employer failed to provide a reasonable accommodation thereafter. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022). If the plaintiff meets her burden, "then the burden shifts to defendant to show that the accommodation would cause undue hardship for the employer." *Id.*

Here, it is undisputed that Plaintiff is disabled and that Defendant denied her request for a rolling chair, which she previously used in order to perform her duties. The parties' dispute centers around whether Plaintiff is a "qualified individual" under the ADA.

An employee seeking to establish that she is "otherwise qualified" under the second prong must demonstrate that she can perform the essential functions of her job without accommodation from the employer or with a proposed reasonable accommodation. *Id.* Where, as here, the employee argues that she is qualified with a proposed reasonable accommodation, she has the burden of demonstrating that the proposed accommodation is reasonable. *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 111 (6th Cir. 2009) (explaining that under the ADA, "the plaintiff bears the initial burden of proposing an accommodation and showing that *that*

6

accommodation is objectively reasonable") (cleaned up and citation omitted). "Yet, this showing only gets an employee so far. For entitlement to relief also requires good faith engagement in the interactive process. *Smith v. Shelby Cnty. Bd. of Educ.*, No. 23-5815, 2024 U.S. App. LEXIS 19388, at *10 (6th Cir. Aug. 1, 2024). As noted above, the interactive process is mandatory, and both the employer and the employee have an obligation to participate in good faith. *Kleiber*, 485 F.3d at 871.

"[I]mportantly, an employee cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). If the interactive process uncovers multiple potential accommodations, the employer has "discretion to choose between effective accommodations." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir. 1996) (citing 29 C.F.R. pt. 1630, app. at 415). And "[i]f an employee rejects a reasonable accommodation, the individual is no longer considered a 'qualified individual with a disability.'" *Talley*, 542 F.3d at 1108; 29 C.F.R. § 1630.9(d).

Moreover, "[a]n employee's premature withdrawal from the process can result in a failure to identify a reasonable accommodation and defeat the employee's claim that [s]he is otherwise qualified for the job." *Smith*, 2024 U.S. App. LEXIS 19388, at *10. In other words, "employers who take 'an active, good-faith role in the interactive process' are not liable under the ADA if their employee 'refuses to participate.'" *Id.* at *13 (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 806 (7th Cir. 2005); *see also Lockard v. General Motors Corp.,* 52 Fed. Appx. 782, 788 (6th Cir. Dec. 11, 2002) (citation omitted) ("To bear liability for a failure to accommodate, an employer must be responsible for a breakdown in the interactive process.").

Defendant argues that Plaintiff is not qualified under the ADA because she is unable, or unwilling, to comply with a required safety policy, i.e. the prohibition on rolling chairs. [Doc. 25 at 7]. In a related argument, Defendant maintains that because the rolling chair would violate a safety policy, it is not a reasonable accommodation. [*Id.* at 10]. Alternatively, Defendant asserts that Plaintiff is not qualified because she rejected reasonable accommodations offered by Lions and failed to engage in the interactive process in good faith. [*Id.*]. Defendant points out that Plaintiff worked in the swivel chair for only two days, rejected attempts to rearrange her workstation or move lighting, and then removed herself from the workplace altogether, "thus unilaterally shutting down the interactive process." [*Id.* at 11].

Plaintiff asserts that she is a qualified individual because she was able to perform her duties using the rolling chair, which she maintains is a reasonable accommodation. [Doc. 27-1 at 5]. She disputes whether a safety policy prohibiting rolling chairs really existed. [*Id.* at 7–8]. In support of that argument, she notes that the policy is not documented in writing; some Lions employees could not recall how and when the policy came about when questioned during their depositions; and several rolling chairs were still on the production floor when Plaintiff returned from medical leave in April 2023. [*Id.*]. Plaintiff also questions the need for a safety policy involving the chairs, noting that even though Defendant claims there were multiple falling incidents, only one such incident was documented with OSHA[2] between March 2022 and May 2023. [*Id.* at 7, 10]. Finally, she asserts that if there was a safety policy prohibiting rolling chairs, an exception should have been made for her, since she used the chair for two years without incident and she is not visually impaired. [*Id.* at 6, 12].

---

[2] Occupational Safety and Health Administration ("OSHA").

Contrary to Plaintiff's argument, the Court finds no genuine dispute that Lions adopted a safety policy prohibiting the use of rolling chairs. Multiple Lions employees testified to the existence of the policy in their depositions. [*See* Doc. 24-1 at 32–33; Doc. 27-4 at 14, 24, 53–55, 62, 70–71]. Plaintiff provides no evidence to refute Plant Supervisor Jean Bradley's testimony that rolling chairs were converted or removed from the production floor while Plaintiff was on medical leave. [3] [*See* Doc. 24-1 at 34]. And Plaintiff offers no viable theory as to why rolling chairs would be removed if not for safety reasons. However, the record also shows that not all Lions employees were clearly informed about the policy, which was unwritten. And as Plaintiff points out, there were still several rolling chairs on the production floor when she returned to work. This begs the question of how strictly the prohibition on rolling chairs was being enforced and whether an exception might have been made for Plaintiff. Further, as a rule, the reasonableness of an accommodation is a fact issue reserved for the jury. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998 ("The reasonableness of an accommodation is a fact issue."). Accordingly, the Court will assume, for the purposes of this analysis, that Plaintiff's request for a rolling chair was not unreasonable.

Nevertheless, even assuming a rolling chair was a reasonable accommodation, Defendant was not required to provide one if another reasonable accommodation was offered. *See Talley*, 542 F.3d at 1108 (explaining that "an employee cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation."). The record shows that Defendant took an active, good faith role in the interactive process by suggesting reasonable

---

[3] In her Response, Plaintiff claims that wheeled chairs were on the production floor up until March 15, 2024, based on a statement made by Lions employee Thelma Milano in her deposition. [Doc. 27 at 11]. However, as Defendant points out, Ms. Milano stated multiple times that the prohibition on rolling chairs started while Plaintiff was out on medical leave, only placing that event in 2024 when pressed to recall the year. [Doc. 27-4 at 61–65]. In her sworn declaration Milano clarified that she better remembered the order of events than the year the safety policy was implemented. [Doc. 30 at 11–12]. Given the foregoing, the Court does not find that Milano's testimony creates a genuine issue regarding when the rolling chair policy was implemented.

9

accommodations. One of these suggestions would have modified Plaintiff's workstation so that she could swivel without the need to push her chair forward or backward. And in her deposition, Plaintiff acknowledged that this suggestion, if it had worked, would have solved her problem. However, Plaintiff declined to try the suggested modification. Because Plaintiff rejected the reasonable accommodation Defendant offered, she is not a qualified individual under the ADA. *See* 29 C.F.R. § 1630.9.

Moreover, in addition to rejecting a reasonable accommodation, Plaintiff prematurely withdrew from the interactive process. *See Smith*, 2024 U.S. App. LEXIS 19388, at *10 (recognizing that "[a]n employee's premature withdrawal from the process can result in a failure to identify a reasonable accommodation and defeat the employee's claim that [s]he is otherwise qualified for the job."). After returning from an extended medical leave of more than six months, Plaintiff went to work only three days. She indicated to Defendant that she was not willing to accept any accommodation except the rolling chair. And on the following Monday, April 17, 2023, she effectively ended the interactive process by returning to medical leave. Further, the doctor's note that she provided to Defendant included no projected return date and indicated that she would not be reevaluated until two months later. Because Plaintiff was responsible for the breakdown in the interactive process, she is not qualified and her ADA claim must be dismissed. *See Lockard*, 52 F. App'x. at 788 ("To bear liability for a failure to accommodate, an employer must be responsible for a breakdown in the interactive process.").

### B.     TDA Claim

Plaintiff's only remaining claim is her state law claim, brought under the Tennessee Disability Act. Because the dismissal of Plaintiff's ADA claims extinguishes the basis for original federal jurisdiction in the case, the Court will decline to exercise supplemental jurisdiction over

the state law claim. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims."); *see also Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) ("Comity to state courts is considered a substantial interest; therefore, this Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed [.]").

## IV.     CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment [Doc. 24] is **GRANTED in PART** as to Plaintiff's ADA claim, and therefore, Plaintiff's ADA claim is **DISMISSED with PREJUDICE**. Plaintiff's remaining state claim under the TDA is **DISMISSED without PREJUDICE**.

An appropriate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

11